UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF MISSISSIPPI

IN RE: STANFORT WEBB, JR.  CASE NO. 10-10476

OPINION

On consideration before the court is a Motion for Order of Contempt and Sanctions filed by the pro se debtor, Stanfort Webb, Jr.; no response having been filed by the creditor/respondent, Quick Lend, Inc.; and the court, having heard and considered same, hereby finds as follows, to-wit:

I.

The court has jurisdiction of the parties to and the subject matter of this proceeding pursuant to 28 U.S.C. §1334 and 28 U.S.C. §157. This is a core contested proceeding as defined in 28 U.S.C. §157(b)(2)(A), (E), and (O).

II.

The debtor filed a voluntary petition for relief pursuant to Chapter 7 of the United States Bankruptcy Code on February 1, 2010. Prior to his bankruptcy filing, the debtor had entered into a loan transaction with the respondent, Quick Lend, Inc., ("Quick Lend"). Contemporaneously with the receipt of a cash advance, the debtor tendered to Quick Lend his personal check, No. 1280, dated January 3, 2010, drawn on his account at First Tennessee Bank in the sum of $365.85. In keeping with the terms of the loan transaction, this check was to be negotiated by Quick Lend in approximately 60 days if the loan had not been otherwise satisfied by the debtor.

The debtor testified that on February 3, 2010, he notified Quick Lend that he had filed his bankruptcy case by facsimile transmission. He received a notification that the transmission had

been successfully completed. In his motion, the debtor indicated that subsequent to the aforementioned bankruptcy notification that Quick Lend contacted him on approximately four occasions demanding payment of the debt.

The debtor testified that even though Quick Lend was obviously aware of his bankruptcy filing, on March 3, 2010, Quick Lend negotiated the check that he had previously tendered which caused his bank account at First Tennessee Bank to become overdrawn. He was thereafter assessed with overdraft charges by the bank.

The debtor contends that the negotiation of his check by Quick Lend constituted a willful and malicious violation of the automatic stay as provided in §362(a) of the Bankruptcy Code[1]. As such, he seeks a finding of contempt against Quick Lend and sanctions for its conduct.

III.

Subsection 362(b)(11) of the Bankruptcy Code provides that:

(b) The filing of a petition under §301, 302, or 303 of this title...does not operate as a stay –
    (11) Under subsection (a) of this section of the presentment of a negotiable instrument and the giving of notice of and protesting dishonor of such instrument.

In both Mississippi and Tennessee, a personal check generally qualifies as a negotiable instrument. *See, EZ Cash v. Brigance (In re Brigance)*, 234 B.R. 401, 405 (W.D. Tenn. 1999) (citing T.C.A. §47-3-104); *Drinkard v. Jennings*, 582 S.W. 2d 387, 390 (Tenn. C.T. App. 1978) ("Section 47-3-104, T.C.A. provides that the form of negotiable instruments may be a draft or a check, or a certificate of deposit, and defines a check as a negotiable instrument under the

---

[1] Hereinafter, all Code sections cited in this opinion will be considered as sections of the United States Bankruptcy Code unless specifically designated otherwise.

2

statute.") *See also, §75-3-104, Miss. Code Ann.*, and *Hancock Bank v. Ensenat*, 819 So. 2d 3 (Miss. App. 2001).

The check that the debtor tendered to Quick Lend was a negotiable instrument. Because of the unambiguous language of §362(b)(11), the negotiation of this check, even subsequent to the filing of the debtor's bankruptcy case, did not constitute a violation of the automatic stay.

Fortunately for the debtor, however, this matter does not end with the aforesaid conclusion. In a proceeding, involving factual circumstances very similar to those presently before this court, *Franklin v. Kwik Cash of Martin (In re Franklin)*, 254 B.R. 718 (Bankr. W.D. Tenn. 2000), Bankruptcy Judge G. Harvey Boswell provided the following insightful comments:

> ... "[E]xcepting the presentment of negotiable instruments from the automatic stay and permitting the innocent transfer of estate money does not mean that estate money received postpetition may be retained." *Wittman v. State Farm Life Insurance Co., Inc., (In re Mills)*, 167 B.R. 663, 664 (Bankr. D. Kan. 1994). *aff'd.*, 176 B.R. 924 (D.Kan. 1994). What the Court must now decide is whether or not Kwik Cash is entitled to retain the $ 230 they received when First Citizens honored Franklin's check on June 1, 2000.
>
> *Section 549(a) of the Bankruptcy Code* provides that the trustee may avoid unauthorized post-petition transfers of property of the estate. *11 U.S.C. §549(a)(1) and (2)(B)*. Checking account balances become "property of the estate" once a bankruptcy petition is filed. *11 U.S.C. §541(a)*. In the case of *Barnhill v. Johnson, 503 U.S. 393, 112 S.Ct. 1386, 118 L. Ed. 2d 39 (1992)*, the United States Supreme Court held that "[f]or the purposes of payment by ordinary check, . . . a 'transfer' as defined by 101(54) [of the Bankruptcy Code] occurs on the date of honor, and not before." *Id. at 400.* "[T]he payment of checks presented post-petition constitutes a 'transfer' of property of the estate and if this transfer is not authorized by the Bankruptcy Code it may be set aside pursuant to *11 U.S.C. §549.*" *In re Hoffman, 51 B.R. 42, 46 (Bankr. W.D. Ark. 1985).*
>
> > FN2. *Section 522(h)* gives debtors the power to avoid post-petition transfers of property pursuant to §549 if "such transfer is avoidable by the trustee" and "the trustee does not attempt to avoid such transfer." *11 U.S.C. §522(h)(1) and (2).* Because the trustee has not attempted to avoid the transfer to Kwik Cash in the five

3

months since the case was filed, the Court finds that the debtors
may properly bring such an action.

In the case at bar, when Franklin filed his chapter 13 petition on May 23, 2000, his First Citizens' checking account became "property of the estate" and the bank became obliged to turn over the account balance to the trustee. *11 U.S.C. §541(a); 11 U.S.C. §542; Mills, 167 B.R. at 664.* Additionally, when First Citizens honored the debtor's May 8th check on June 1, 2000, a post-petition transfer of "property of the estate" occurred.

254 B.R. at 721.

For consistent holdings, *see also*, *Thomas v. Moneymart Financial Services, Inc. (In re Thomas)*, 311 B.R. 75 (Bankr. W.D. Mo. 2004); *Blasco v. Money Services Center, d/b/a Cash Connection (In Re Blasco)*, 352 B.R. 888 (Bankr. N.D. Ala. 2006); *Buckeye Check Cashing, Inc., d/b/a CheckSmart v. Meadows (In Re Meadows)*, 396 B.R. 485 (B.A.P. 6th Cir. 2008); *Davison v. Kanipe (In re Davison)*, 410 B.R. 607 (E.D. Tenn. 2009); and *In re Kearns*, 2010 Bankr. LEXIS 998 (Bankr. D. Idaho 2010).

The court in the *Blasco* decision, cited hereinabove, made the following observation:

> For the reasons stated above, the plaintiff's check was a negotiable instrument governed by Article 3 of the Alabama U.C.C. Presentment of a negotiable instrument is not a violation of the automatic stay. *11 U.S.C. §362(b)(11)*. Payday loan companies were non-existent or at least not as prevalent when Alabama enacted the U.C.C. or when its last major revision was adopted in 1995. However, the payday loan industry was going strong when the U.S. Congress enacted the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), and Congress did not make amendments to the Bankruptcy Code to restrict postpetition presentment of debtor's checks by payday loan lenders. To the extent the subject was even on the mind of Congress at the time it was considering BAPCPA, perhaps it believed that the avoidance powers in *Section 549 of the Bankruptcy Code* are a sufficient remedy to protect the estate from such transfers.

352 B.R. at 894 - 95.

Since the monetary amount involved in this proceeding is relatively nominal, the court will not require the debtor to file an adversary complaint. The court will conclude this matter by entering an order awarding a judgment in favor of the debtor, Stanfort Webb, Jr., against the respondent, Quick Lend, Inc., in the sum of $365.85, bearing interest at the highest rate permitted by the laws of the State of Mississippi from and after March 3, 2010, the date that the said respondent effected the post-petition transfer of property from the debtor's bankruptcy estate in violation of §549 of the Bankruptcy Code by negotiating the debtor's personal check. This is the extent of the relief that can be granted to the debtor as permitted by the current status of the Bankruptcy Code.

IV.

Following the foregoing analysis, the court would summarize its conclusions as follows:

1. The post-petition negotiation of the debtor's personal check is not a violation of the automatic stay as a result of the exception found in §362(b)(11). The personal check is considered a negotiable instrument according to the laws of both the State of Mississippi and the State of Tennessee.

2. The post-petition negotiation of the debtor's personal check constitutes an avoidable post-petition transfer as set forth in §549(a) of the Bankruptcy Code. Since the Chapter 7 trustee has disclaimed any interest in this property because of its inconsequential monetary value, the avoidance action may be maintained directly by the debtor. The court will not require the debtor to file an adversary complaint because the amount in question is nominal.

3. By a separate order, the court will award the debtor a judgment against the respondent, Quick Lend, Inc., in the sum of $365.85, bearing interest at the highest rate allowed by the laws of the State of Mississippi from and after March 3, 2010, the date that Quick Lend, Inc., effected the post-petition transfer.

This the 18th day of May, 2010.

/s/ David W. Houston, III
DAVID W. HOUSTON, III
UNITED STATES BANKRUPTCY JUDGE